UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KENNETH GATES, JR., as Executor of the
Estate of KENNETH GATES AND GLADYS
GATES,

                      Plaintiff,

  -v-                                                    3:13-CV-1435

A.O. SMITH WATER PRODUCTS CO.;
A.W. CHESTERTON COMPANY;
AMERICAN STANDARD, INC.; AVIATION
MANUFACTURING CORPORATION,
Individually and as successor in interest
to SPENCER HEATER; BURNHAM, LLC,
as successor to BURNHAM
CORPORATION; CBS CORPORATION,
a Delaware Corporation formerly known
as Viacom, Inc., successor-by-merger to
CBS Corporation, a Pennsylvania
Corporation formerly known as Westinghouse
Electric Corporation; CERTAIN TEED
CORPORATION; CLEAVER BROOKS
COMPANY, INC.; CRANE CO.; CROWN
BOILER CO., formerly known as Crown
Industries Inc.; DANA CORPORATION;
DURABLA MANUFACTURING COMPANY;
EMPIRE-ACE INSULATION MFG. CORP.;
FOSTER WHEELER LLC; FULTON BOILER
WORKS, INC.; GOODYEAR CANADA, INC.;
GOODYEAR TIRE & RUBBER COMPANY;
GOULDS PUMPS, INC.; H.B. SMITH
COMPANY, INCORPORATED;
HOLLINGSWORTH & VOSE, CO.; ITT
INDUSTRIES, INC.; ITT INDUSTRIES, INC.,
as successor to Bell & Gossett Company
and as successor to Kennedy Valve
Manufacturing Co., Inc., and as successor to
Grinnell Valve Co., Inc.; J.H. FRANCE
REFRACTORIES COMPANY;
KENTILE FLOORS, INC.; MINNESOTA
MINING & MANUFACTURING COMPANY;
PATTERSON KELLY DIVISION; PEERLESS

INDUSTRIES, INC.; ROBERT A. KEASBEY
COMPANY; UTICA BOILERS, INC.,
Individually and as successor to UTICA
RADIATOR CORPORATION; WEIL-MCLAIN,
a division of The Marley Company; and
YORK INDUSTRIES CORP.,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| WEITZ, LUXENBERG LAW FIRM<br>Attorneys for Plaintiff<br>700 Broadway<br>New York, NY 10003 | KYLE A. SHAMBERG, ESQ.<br>JOHN E. RICHMOND, ESQ. |
| WILSON, ELSER LAW FIRM<br>Attorneys for Defendants A.W. Chesterton<br>    Company and Burnham, LLC<br>150 East 42nd Street<br>New York, NY 10017 | JULIE R. EVANS, ESQ. |
| MCGUIRE, WOODS LAW FIRM<br>Attorneys for Defendant American<br>    Standard, Inc.<br>1345 Avenue of the Americas<br>Seventh Floor<br>New York, NY 10105 | GENEVIEVE MACSTEEL, ESQ. |
| MALABY, BRADLEY LAW FIRM<br>Attorneys for Defendants CBS Corporation,<br>    Cleaver Brooks Company, Inc., and<br>    Weil-McLain<br>150 Broadway, Suite 600<br>New York, NY 10038 | DAVID P. SCHAFFER, ESQ. |
| MACKENZIE, HUGHES LAW FIRM<br>Attorneys for Defendant Cleaver Brooks<br>    Company, Inc.<br>101 South Salina Street, Suite 600<br>Syracuse, NY 13202 | STEPHEN S. DAVIE, ESQ. |

| | |
|---|---|
| K&L GATES LLP<br>Attorneys for Defendant Crane Co.<br>599 Lexington Avenue<br>New York, NY 10020 | ANGELA DIGIGLIO, ESQ.<br>ERIC R.I. COTTLE, ESQ.<br>NICOLE M. KOZIN, ESQ. |
| SEDGWICK LLP<br>Attorneys for Defendant Foster Wheeler LLC<br>Three Gateway Center, 12th Floor<br>Newark, NJ 07102 | MICHAEL A. TANENBAUM, ESQ. |
| BARRY, MCTIERNAN LAW FIRM<br>Attorneys for Defendants Fulton Boiler<br>    Works, Inc. and Utica Boilers, Inc.<br>2 Rector Street<br>New York, NY 10006 | SUZANNE M. HALBARDIER, ESQ.<br>WILLIAM A. COONEY, ESQ. |
| GOLDBERG, SEGALLA LAW FIRM<br>Attorneys for Defendant Goulds Pumps, Inc.<br>5786 Widewaters Parkway<br>Syracuse, NY 13214 | LISA MARIE ROBINSON, ESQ. |
| HARRIS, BEACH LAW FIRM<br>Attorneys for Defendant Kentile Floors, Inc.<br>100 Wall Street, 32nd Floor<br>New York, NY 10005 | ABBIE LYNN ELIASBERG FUCHS, ESQ.<br>CYNTHIA WEISS ANTONUCCI, ESQ. |
| MARSHALL, DENNEHEY LAW FIRM<br>Attorneys for Defendants Peerless<br>    Industries, Inc. and Robert A. Keasbey<br>    Company,<br>888 Veterans Memorial Highway, Suite 540<br>Hauppauge, NY 11788 | ANNA M. DILONARDO, ESQ. |
| HURWITZ, FINE LAW FIRM<br>Attorneys for Defendant Weil-McLain<br>1300 Liberty Building<br>424 Main Street<br>Buffalo, NY 14202 | V. CHRISTOPHER POTENZA, ESQ. |

DAVID N. HURD
United States District Judge

**MEMORANDUM–DECISION and ORDER**

## I. INTRODUCTION

On November 18, 2013, defendant Crane Co. ("defendant" or "Crane") invoked the federal officer removal statute, 28 U.S.C. § 1442(a)(1), and removed this asbestos-related tort action to federal court. Plaintiff Kenneth Gates, Jr., as Executor of the Estate of Kenneth Gates and Gladys Gates ("plaintiff" or "Executor"), has moved to remand the action to state court based on a lack of subject matter jurisdiction. Defendant opposed. The motion was taken on its submissions without oral argument.

## II. BACKGROUND

On October 7, 2004, Kenneth Gates, Sr. ("Mr. Gates") commenced this action in New York State Supreme Court, Broome County. See generally Def.'s Notice of Removal, Ex. 1, ECF No. 1-2 ("Verified Complaint"). The Verified Complaint generally alleged that Mr. Gates had been exposed to asbestos and asbestos-containing products "mined, manufactured, processed, imported, converted, compounded, installed, or sold" by Crane and numerous other named defendants during his lifetime. Id. ¶ 47. It further alleged that this exposure caused him to develop an asbestos-related disease.[1] Id.

However, the Verified Complaint did not specifically allege "when, where, or how" Mr. Gates was exposed to asbestos from Crane products nor did it allege at what job sites he had suffered exposure during his forty-six year work career. See Richmond Aff., ECF No. 16, ¶ 3; Def.'s Notice of Removal ¶ 2. On December 18, 2004, Mr. Gates died and plaintiff, as executor of his estate, continued to prosecute the action.

---

[1] Mr. Gates was diagnosed with pleural disease on November 2, 1992, and mesothelioma on June 3, 2004. See Def.'s Notice of Removal, Ex. 2, ECF No. 1-3, 6.

On October 18, 2013, plaintiff responded to defendants' Fourth Amended Interrogatories and Request for Production of Documents. See Def.'s Notice of Removal, Ex. 2, ECF No. 1-3, 3 ("Discovery Responses"). These responses alleged more specifically that Mr. Gates had been exposed to asbestos "from a variety of different asbestos containing products that he worked with or around as a plumber, steamfitter, and seaman." Id. 11 (emphasis omitted). These responses also alleged, inter alia, that Mr. Gates had been exposed to asbestos-containing insulation used on equipment such as valves, and that Crane was among the parties responsible for the manufacture, distribution, sale, and use of this equipment. Id. 12.

These Discovery Responses also included a chart entitled "Jobsite-Specific Exposure History for [Mr. Gates]," which indicated that he had been exposed to asbestos during his service as a Seaman in the U.S. Navy from 1953 to 1955. Id. 27. This chart also indicated that this exposure occurred while Mr. Gates was at the United States Naval Training Center in Maryland as well as during his time aboard the U.S.S. Markab and the U.S.S. Hazelwood. Id.

On November 18, 2013, Crane invoked federal-question jurisdiction under the federal officer removal statute and removed the action to federal court based on the additional allegations in these discovery responses. See Def.'s Notice of Removal ¶ 7. Shortly thereafter, plaintiff filed this motion to remand based on a lack of subject matter jurisdiction. ECF No. 15.

## III. **DISCUSSION**

### A. Legal Standard

A case must be remanded to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). "When a party files a motion to remand challenging the removal of an action from state court, 'the burden falls squarely upon the removing party to establish its right to a federal forum.'" Hill v. Delta Int'l Mach. Corp., 386 F. Supp. 2d 427, 429 (S.D.N.Y. 2005) (quoting R.G. Barry Corp. v. Mushroom Makers, Inc., 612 F.2d 651, 655 (2d Cir. 1979)). "[I]f subject matter jurisdiction is contested, courts are permitted to look to materials outside the pleadings." Romano v. Kazacos, 609 F.3d 512, 520 (2d Cir. 2010).

Generally, federal-question jurisdiction may only be invoked where a federal question is presented on "the face of a properly pleaded complaint; an anticipated or actual federal defense generally does not qualify a case for removal." Jefferson County v. Acker, 527 U.S. 423, 430-31 (1999) (citing Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152 (1908)). Suits against federal officers and those acting at their direction are an exception to this general rule. See id. ("Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law.").

### B. The Federal Officer Removal Statute

Crane contends that it is entitled to invoke the federal officer removal statute because the Crane products to which Mr. Gates was allegedly exposed were designed and manufactured while Crane was acting under the direction of the Navy as a government contractor.

The federal officer removal statute provides that a case may be removed from state to federal court when the case is brought against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). The U.S. Supreme Court has explained that this statute must be construed broadly because "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." Willingham v. Morgan, 395 U.S. 402, 407 (1969).

A private government contractor sued as a defendant in state court may assert federal-question jurisdiction and effect removal under this statute where it can show: (1) it is a person who acted under a federal officer; (2) it performed the actions for which it is being sued under color of federal office; and (3) it has a colorable federal defense. Isaacson v. Dow Chem. Co., 517 F.3d 129, 135 (2d Cir. 2008); see also Depascale v. Sylvania Elec. Prods., Inc., 584 F. Supp. 2d 522, 526 (E.D.N.Y. 2008) (collecting cases).

### 1. Person Acting Under a Federal Officer

The first prong of the test requires a defendant to show it is a person who acted under a federal officer. See Isaacson, 517 F.3d at 135. The parties do not dispute that Crane is a "person" for purposes of removal. See In re Methyl Tertiary Butyl Esther Prods. Liab. Litig., 488 F.3d 112, 124 (2d Cir. 2007) (holding that corporate entities are "persons" under the statute).

There is also evidence that Crane acted under a federal officer in manufacturing and supplying its products to the Navy. "The words 'acting under' are to be interpreted broadly." Isaacson, 517 F.3d at 136 (citing Watson v. Philip Morris Cos., 551 U.S. 142, 147 (2007)).

"An entity acts under a federal officer when it helps with or carries out that officer's duty, often under close supervision." Isaacson, 515 F.3d at 137; see also Ruppel v. CBS Corp., 701 F.3d 1176, 1182 (7th Cir. 2012) ("Cases in which the Supreme Court has approved removal involve defendants working hand-in-hand with the federal government to achieve a task that furthers an end of the federal government.").

Here, Crane asserts that it "made and supplied equipment, including valves, for Navy ships under contracts between Crane Co. and . . . the Navy Department." Pantaleoni Aff., ECF No. 1-3, ¶ 4. Defendant also asserts that these contracts were governed by an extensive set of federal standards and specifications and that the Navy was involved in the design and manufacture of equipment, including valves, from Crane. Id. ¶ 3,5. These assertions are sufficient evidence at this early stage of the litigation to show that Crane acted "under" Naval authorities in building and supplying components, including valves, to assist the Navy in producing naval vessels. Accordingly, the first prong of the test has been met.

### 2. Actions Under Color of Federal Office

Plaintiff argues Crane cannot show that the asbestos-containing products to which Mr. Gates was allegedly exposed were supplied under color of federal office because there are

no allegations of exposure to Crane products during Mr. Gates' naval service.[2] Pl.'s Mem. 2. Defendant argues the discovery responses sufficiently allege exposure to Crane products during Mr. Gates' naval service to support removal under the statute. Def.'s Mem. 4.

The second prong of the test requires a defendant to show that it performed the actions at issue under color of federal office. See Isaacson, 517 F.3d at 137. This prong has come to be known as "the causation requirement," and requires private parties to "demonstrate that the acts for which they are being sued . . . occurred because of what they were asked to do by the Government." Id. (citation and emphasis omitted). "The hurdle erected by this requirement is quite low" and only requires a defendant to show the act occurred while it was performing official duties. Id. A court credits the defendant's theory of the case when determining whether a causal connection exists. Id. (citing Acker, 527 U.S. at 432.

Here, plaintiff's discovery responses alleged exposure "from a variety of different asbestos containing products that he worked with or around as a plumber, steamfitter, and seaman" used on equipment such as "pumps, valves, and turbines" and that Crane was among the parties responsible for the manufacture, distribution, sale, and use of this

---

[2] Presumably, Mr. Gates may have been exposed to Crane products at other points in his forty-six year work history. However, plaintiff neglects to discuss Levy, a recent decision which held that nearly identical discovery responses in an asbestos-related tort action against Crane were sufficient to put it on notice of its federal defense. See Levy v. A.O. Smith Water Prods. Co., No. 12-CV-5152, 2012 WL 2878140 (S.D.N.Y. July 13, 2012) (Scheindlin, J.).

In Levy, Crane did not immediately seek removal following a set of discovery responses alleging that the plaintiff was exposed to asbestos-containing products manufactured by Crane and other defendants on specific Navy ships during a specific time period. Id. at *2. Rather, defendant waited until a later set of discovery responses alleged exposure to specific Crane products. Id. at *1. The plaintiffs' counsel in Levy successfully argued Crane's removal was untimely because the earlier discovery responses were sufficient to put it on notice of the availability of its federal defense and begin the thirty-day limitations period for removal. Id. at *2. The same counsel represents plaintiff in this action, and as defendant correctly notes, they now urge an opposite result on nearly identical facts.

equipment.  See Discovery Responses 11-12 (emphasis omitted).  Further, the chart attached to these responses alleged Mr. Gates had been exposed to asbestos during his service as a Seaman in the U.S. Navy from 1953 to 1955 and indicated that this exposure occurred while he was at the United States Naval Training Center in Maryland and during his time aboard the U.S.S. Markab and the U.S.S. Hazelwood.  Id. 27.

Crane asserts that Mr. Gates' exposure to its asbestos-containing products occurred during his naval service, and that those products were manufactured and supplied to the Navy to fulfill its ship-building needs under various contracts.  See Pantaleoni Aff. ¶ 6 ("All equipment suppled by Crane Co. to the Navy was built in accordance with [Navy] specifications.").  Despite plaintiff's arguments to the contrary, these discovery responses allege exposure aboard specific ships, during a specific time period, from specific asbestos-containing products, including valves, that were manufactured by specific defendants, including Crane.  See Discovery Responses 11-12, 27.  Defendant's assertions in light of the additional allegations in the discovery responses are sufficient to clear the "relatively low" hurdle imposed by the causation requirement.  See Isaacson, 517 F.3d at 137.  Accordingly, the second prong of the test has been met.

### 3. Colorable Federal Defense

Plaintiff argues that Crane cannot assert a colorable government contractor defense because it cannot "show that the Navy's specifications or contract terms made it impossible for a contractor simultaneously to comply with those specifications and to fulfill State law warnings requirements."  Pl.'s Mem. 5.  Defendant argues that it is not required to make such an evidentiary showing to defeat plaintiff's motion for remand.  Def.'s Mem. 8.

At this early stage of litigation, a federal officer or his agent "need not win his case before he can have it removed" to federal court. Willingham, 395 U.S. at 407; see also Ruppel, 701 F.3d at 1182 ("At this point, we are concerned with who makes the ultimate determination, not what that determination will be."). However, district courts are divided on the standard required for an asbestos defendant asserting the government contractor defense to succeed in showing a "colorable federal defense." See Hagen v. Benjamin Foster Co., 739 F. Supp. 2d 770, 782 (E.D. Pa. 2010). After analyzing the conflicting authority on this issue, the Hagen court explained:

> While the Court must require that the facts identified by the defendant support the federal defense, the Court is not called upon at this preliminary stage to pierce the pleadings or dissect the facts stated. Nor is it the Court's function at this stage to determine credibility, weigh the quantum of evidence or discredit the source of the defense . . . . It is the sufficiency of the facts stated—not the weight of the proof presented—that matters. For policy reasons, Congress has erected a road to federal court for litigants who can invoke a federal defense. It is not the Court's role to impose judicially created tolls on those who seek to travel on it. Thus, the Court concludes that a defense is colorable for purposes of determining jurisdiction under Section 1442(a)(1) if the defendant asserting it identifies facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial.

Hagen, 739 F. Supp. 2d at 782-83. Other district courts in the Second Circuit have recently expressed agreement with this permissive standard. See, e.g., Gordon v. Air & Liquid Sys. Corp., No. 13-CV-969, 2014 WL 31419, at *3 (E.D.N.Y. Jan. 6, 2014); Clayton v. Air & Liquid Sys. Corp., No. 13-CV-847-A, 2013 WL 6532026, at *7 (W.D.N.Y. Dec. 12, 2013) (adopting Report & Recommendation). Accordingly, a colorable federal defense is one that identifies fact which, viewed in the light most favorable to the defendant, would establish a complete defense at trial.

The federal contractor defense displaces state-law design and manufacturing duties when: (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. Boyle v. United Tech. Corp., 487 U.S. 500, 512 (1988). In the context of a failure-to-warn case, Boyle also requires a defendant to show that federal officials "dictated" the contents of any warnings that would accompany the product. See Grispo v. Eagle-Pitcher Indus. Inc., 897 F.2d 626, 630.

Here, Crane has proffered affidavits by experts knowledgeable about the asbestos-containing products it manufactured for the Navy as well as the government's procurement and regulatory procedures during the relevant time period. See Sargent Aff., ECF No. 1-5, ¶¶ 23-32; Pantaleoni Aff. ¶¶ 5-6. These affidavits support defendant's position that the design, manufacture, and delivery of its products were governed by reasonably precise specifications. See Sargent Aff. ¶ 58 ("[T]he Navy developed precise specifications as to the nature of any markings, communication or directions affixed to or made a part of any equipment supplied . . . for ultimate use aboard Navy ships."). As noted above, defendant has also proffered evidence to support its position that the products it supplied to the Navy conformed to those specifications. See Pantaleoni Aff. ¶ 6.

Crane also provides at least colorable evidence that the Navy was aware of the potential health risks associated with asbestos and that its knowledge was equal or superior to that of its suppliers, including Crane. See Forman Decl., ECF No. 1-8, ¶¶ 26-35 ("[T]he Navy's knowledge in the areas of asbestos and associated health conditions has been quite complete when compared to available knowledge over time."). A showing that the

government "knew as much as or more than the defendant about the hazards" will satisfy the third prong of the Boyle test. In re "Agent Orange" Prod. Liab. Litig., 534 F. Supp. 1046, 1055 (E.D.N.Y. (1982); see also Gordon, 2014 WL 31419, at *6 ("Where the government has an informational advantage, Boyle's third prong does not require evidence that defendants warned the government." (citations omitted)).

Plaintiff proffers expert declarations as well as deposition testimony from other pending asbestos litigation to essentially argue that defendant's federal defense cannot succeed on the merits.[3]  Specifically, plaintiff argues that the Navy did not place any "limitation or restriction" on the sort of precautions that should accompany products about hazards "that might arise during the installation process." Pl.'s Mem. 14; see also Hilbert v. McDonnell Douglas Corp., 529 F. Supp. 2d 187, 199 (D. Mass. 2008) ("If no federal policy is infringed and the contractor had discretion to warn, then the affirmative federal contractor defense must fail.")

But Boyle and Grispo, which specifically require a showing that federal officials "dictated" the contents of any warnings in order to defeat a failure-to-warn claim, examined the merits of the federal contractor defense at a later stage of litigation.  Although those cases define the elements necessary to ultimately succeed on the defense, a defendant seeking to defeat remand at this stage need only show the federal defense is "colorable,"[4] not "clearly sustainable."  See Willingham, 395 U.S. at 406-07; see also Ruppel, 701 F.3d at

---

[3] Plaintiff's arguments focus on his failure-to-warn claims.  Defendant correctly argues that plaintiff does not address the effect of the government contractor defense on his "use-of-asbestos" claims. Def.'s Mem. 11.

[4] A colorable claim is "[a] claim that is legitimate and that may reasonably be asserted, given the facts presented and the current law (or a reasonable and logical extension or modification of the current law). BLACK'S LAW DICTIONARY 264 (8th Ed. 2004).

- 13 -

1182 ("The validity of the defense will present complex issues, but the propriety of removal does not depend on the answers.") (citation and internal quotation marks omitted); Pack v. AC & S, Inc., 857 F. Supp. 26, 28 (D. Md. 1994) ("At this stage of the litigation, it would be unreasonable for this Court to insist upon a detailed analysis of the federal contractor defense and attempt to gauge the likelihood of success . . . . the validity [of the defense] should be judged by federal standards in a federal district court." (citing Willingham, 395 U.S. at 402)). Defendant has identified facts which, viewed in the light most favorable to it, would establish its entitlement to the government contractor defense at trial. Accordingly, the third prong of the test has been met.

Plaintiff's arguments may certainly have merit later in this litigation, but they ask more of defendant at this stage than the federal officer removal statute requires. See Mesa v. California, 498 U.S. 121, 129 (1989). Accordingly, plaintiff's motion for remand will be denied.

## IV. **CONCLUSION**

Crane has submitted sufficient evidence to support its position that it can satisfy all three elements of Boyle and has therefore raised a colorable federal defense. If it later becomes evident that the relevant facts developed in the litigation do not support jurisdiction, the action can be dismissed and remanded. See Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action"); 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). While defendant may not ultimately succeed on the merits, Congress' enactment of the federal officer removal

statute requires a federal court to determine if a federal defense is available in this case.

Therefore, it is

ORDERED that

1. Plaintiff's motion to remand is DENIED.

IT IS SO ORDERED.

_____
United States District Judge

Dated: January 9, 2014.
       Utica, New York.